United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Kay Noble, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 18-22629-Civ-Scola |
| Royal Caribbean Cruises Ltd., and others, Defendants. | ) ) |

**Opinion Order on Motion to Dismiss**

This action arises from injuries sustained by the Plaintiff Kay Noble ("Noble") while she was a passenger onboard the *Grandeur of the Seas*, a cruise vessel operated by Defendant Royal Caribbean Cruises Ltd. ("RCCL"). Noble signed up for a shore excursion during a stop in Bar Harbor, Maine. While boarding the bus to transport her to the site of the excursion, Noble tripped and fell over a stack of orange cones, resulting in a broken elbow. Noble claims that RCCL, Intercruises Shoreside and Port Services, Inc. ("ICS," the excursion operator), and an unknown corporation (XYZ Corp.) are to blame for her injuries.

RCCL now moves to dismiss all claims brought against it, (the "Motion," ECF No. 11). Having reviewed the parties' submissions and the applicable law, the Court **grants in part and denies in part** the Motion (**ECF No. 11**) as follows.

1. **Background**[1]

Noble was a passenger aboard the *Grandeur of the Seas*, a cruise vessel operated by RCCL. (ECF No. 9 at ¶ 35.) RCCL offered shore excursions for purchase at different ports of call during the cruise. (*Id.* at ¶ 36.) Noble purchased the "Best of Acadia National Park and Cadillac Mountain" excursion based out of Bar Harbor, Maine. (*Id.* at ¶ 41.) Although ICS was the "owner and operator" of this shore excursion, (*id.* at ¶ 45), "[b]ased upon the advertising and the fact that she was purchasing it through" RCCL, Noble "believed that the excursion was operated" by RCCL. (*Id.* at ¶ 38.) Noble claims she would not have participated in the excursion had she known it was not operated by RCCL. (*Id.* at ¶ 40.)

---

[1] The Court accepts as true the facts pled in the Amended Complaint. *See Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998) ("In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.").

On September 11, 2017, the *Grandeur of the Seas* arrived at Bar Harbor, Maine. (*Id.* at ¶ 41.) Noble departed the ship to board a bus to take her to the excursion. (*Id.* at ¶ 43.) On her way, "she tripped over orange cones stacked alongside the bus," fell forward and "shattered her elbow." (*Id.*)

Noble claims that her injuries are due to the fault of the defendants. So, on June 29, 2018, Noble filed suit against RCCL, ICS and XYZ, Corp. (ECF No. 1.) Noble once amended her complaint, and now asserts seven causes of action for: (1) negligence against RCCL (Count I); (2) negligent selection and retention of tour operator against RCCL (Count II); (3) negligence against ICS (Count III); negligence against XYZ Corp. (Count IV); apparent agency or agency by estoppel against RCCL (Count V); joint venture between RCCL and ICS (Count VI); and joint venture between RCCL and XYZ Corp (Count VII). (ECF No. 9.)

ICS answered the claims asserted against it. (ECF No. 17.) XYZ Corp. has not been identified or served. And RCCL moved to dismiss all counts asserted against it. (the "Motion," ECF No. 11.)

Specifically, RCCL raises the following arguments in the Motion: (1) Counts I, V and VI should be dismissed because any agency or "joint venture" relationship that could form the basis for those claims was disclaimed through Noble's cruise ticket and RCCL's contract with ICS, (ECF No. 11 at pp. 4-9); and (2) Count II fails to plead sufficient facts to state a claim for negligent hiring and retention, (*id.* at pp. 7-8).

## 2. **Legal Standard**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### 3. Analysis

The Court first considers its jurisdiction and the applicable body of law. Federal subject matter jurisdiction exists in this case under 28 U.S.C. § 1333, as the claims arise from injuries sustained at a port-of-call during the course of a cruise shore excursion. (ECF No. 9 at ¶ 43); *Caldwell v. Carnival Corp.*, 944 F. Supp. 2d 1219, 1222 (S.D. Fla. 2013) (Cooke, J.). The diversity statute, 28 U.S.C. § 1332, also supplies federal jurisdiction, as the parties are completely diverse and the amount in controversy exceeds $75,000.00. (ECF No. 9 at ¶¶ 2, 4, 5, 10, 43.) The Defendant's jury demand is therefore proper, *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1366 (11th Cir. 2018), and the Court will apply federal maritime law to its review of the Motion, *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("Even when the parties allege diversity of citizenship as the basis of the federal court's jurisdiction (as they did in this case), if the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case.").

#### A.   "Negligence"

In the Motion, RCCL characterizes Count I as a claim that RCCL negligently operated the shore excursion and argues for dismissal of the claim because ICS, not RCCL, was the excursion operator and no agency relationship existed between those parties. But, as Noble points out, a cursory review of the Amended Complaint reveals that Count I is a claim for negligent failure to warn against RCCL under a direct theory of liability. (*See* ECF No. 9 at ¶¶ 52, 57.) Thus, RCCL's agency-based arguments for dismissal of this claim are immaterial and therefore **denied.**

### B.     Negligent Selection and Retention of Tour Operator

RCCL moves to dismiss Count II for "negligent selection and retention of tour operator," arguing that Noble fails to allege facts plausibly stating a claim for relief. The Court agrees.

"Under Florida law, 'an employer is subject to liability for physical harm to third persons caused by its failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons.'"[2] *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 796 (11th Cir. 2017) (alteration omitted; quoting *Davies v. Comm. Metals Co.*, 46 So. 3d 71, 73 (Fla. 5th DCA 2010)). To establish this claim, a plaintiff must show that "(1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *Id.* (quoting *Davies*, 46 So. 3d at 74). Noble fails to allege facts to support any of these prongs.

First, the Amended Complaint is devoid of factual allegations that ICS was "incompetent or unfit" to lead the tour excursion at issue. Noble's general, boilerplate allegations to this end are untethered from any facts and thus insufficient under Rule 8.[3] *Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require 'detailed factually allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *Gayou v. Celebrity Cruises, Inc.*, No. 11023359, 2012 WL 2049431, *5 (S.D. Fla. June 5, 2012) (Scola, J.). Equally deficient is Noble's fact-free recitation of the

---

[2]   In *Wolf*, the Eleventh Circuit applied this test to claims against a cruise line based on its hiring and retention of a shore excursion operator.

[3]   For example:

> The tour operator(s) retained by RCCL were incompetent because they failed to conduct reasonably safe excursions for RCCL's fare paying passengers, failed to have the requisite facilities, resources and staff/personnel to safely conduct excursions, failed to provide passenger safe routes of ingress/egress to and from the RCCL vessel, and these failures had persisted for a sufficient amount of time that a reasonable inquiry or inspection would have allowed RCCL to identify their shortcomings.

*See* ECF No. 9 at ¶ 60.

various ways RCCL knew or should have known of ICS' purported, but unidentified, incompetence.⁴ *Flaherty v. Royal Caribbean Cruises, Ltd.*, 172 F. Supp. 3d 1348, 1351-52 (S.D. Fla. 2016) (Lenard, J.) (to satisfy the second prong of a claim for negligent selection or hiring, plaintiff must "allege facts 'showing that the employer was put on notice of the harmful propensities of'" an agent/employee/contractor) (alterations omitted; quoting *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1318 (M.D. Fla. 2002)). Likewise, Noble has not factually alleged that any purported "incompetence or unfitness" of ICS proximately caused her to trip and fall over a "stack[]" of "orange cones." (ECF No. 9 at ¶ 43; *id.* at ¶ 64 ("[a]s a direct and proximate result of the breach of the duty alleged above, Plaintiff suffered bodily injury")); *see also Caron v. NCL (Bahamas), Ltd.*, No. 16-23065, 2017 WL 5135857, at *1 n.1 (S.D. Fla. Nov. 3, 2017).

Count II thus fails to state a claim for negligent selection or retention and is **dismissed** without prejudice.

### C. Apparent Agency and Agency by Estoppel

Through Count V, Noble seeks to impose liability on RCCL for the actions of ICS under an apparent agency or agency by estoppel theory. Specifically, Noble asserts that RCCL made various representations that ICS "had the authority to act" for RCCL, (ECF No. 9 at ¶ 86), and that Noble justifiably relied on these representations to her detriment, claiming she would not have participated in the excursion or "incurred any injuries" had she known the tour was not operated by RCCL, (*id.* at ¶ 89). RCCL argues that Count V fails to state a claim because Noble's cruise ticket and RCCL's contract with ICS expressly disclaim the existence of an agency relationship.

---

⁴ For example:

Defendant, RCCL, knew or reasonably should have known that the tour operator(s) was/were incompetent or unfit to conduct the subject shore excursion as: A. The use of poorly maintained passenger loading areas; B. The inadequate supervision of passengers such as Plaintiff traversing the passenger loading area; C. The excursion operator(s) employees, agents, or servants were not properly trained or experienced; D. There was no adequate warning given to passengers such as Plaintiff of the dangers of traversing the subject area; E. The shore excursion employees were inattentive as passengers boarded the bus; F. The shore excursion operator had prior incidents and/or reports of safety issues; and/or G. Defendant, RCCL, failed to monitor the passenger loading area.

*See* ECF No. 9 at ¶ 62.

The "doctrine of apparent agency allows a plaintiff to sue a principal for the misconduct of an independent contractor who only reasonably appeared to be an agent of the principal." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.2d 1225, 1249 (11th Cir. 2014). This doctrine is "distinct" from "actual agency" in that "apparent agency does not turn on any notion of control" over the agent and instead is based in the equitable principle of estoppel. *Id.* at 1249-50. A plaintiff asserting a claim of apparent agency must satisfy "three essential elements: first, a representation by the principal to the plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency." *Id.* at 1252.

The Court is not persuaded by RCCL's argument that the language on Noble's ticket and RCCL's contract with ICS (both describing excursion operators as "independent contractors" and disclaiming liability) forecloses any apparent agency liability at the motion to dismiss stage. First, this argument appears to sound in "actual," not "apparent," agency. *See Gayou*, 2012 WL 2049431, at **9-10 (holding that excursion operator contract "shows as a matter of law that no agency relationship was intended or formed" and thus "the actual agency claim cannot stand."). Nonetheless, the cruise ticket and contract are not sufficient to support dismissal of this count, as the language RCCL relies on presents factual issues that the Court declines to consider at the motion-to-dismiss stage of this litigation. *See Franza*, 772 F.2d at 1250 ("liability may be appropriate under apparent agency principles when a principal's conduct could equitably prevent it from denying the existence of an agency relationship"); *Gayou*, 2012 WL 2049431, at **8-9.

RCCL's request to dismiss Count V is therefore **denied**.

### D.     Joint Venture

RCCL claims the cruise ticket and operator agreement also require dismissal of Counts VI and VII for "joint venture" between RCCL and ICS and "XYZ, Corp.," respectively. Specifically, RCCL claims these documents "establish[] the fact that RCCL had no control over the means and methods by which ICS conducted the excursion and, in particular, the means and methods by which the Plaintiff would have been boarding the bus at the time she tripped and fell over the orange cones." (ECF No. 11 at pp. 8-9.) Notably, RCCL cites no case law to support this argument.

"In a contract creating a joint venture, there must be '(1) a community of interest in the performance of the common purpose[;] (2) joint control or right of control[;] (3) a joint proprietary interest in the subject matter[;] (4) a right to share in the profits[;] and (5) a duty to share in any losses which may be sustained.'"

*Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 798 (11th Cir. 2017). "In stating a claim for joint venture, a plaintiff need not explicitly plead that the parties intended to enter into a joint venture; the intent of the venturers may be inferred from the conduct alleged in the complaint." *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1397 (S.D. Fla. 2014) (Williams, J.).

Perhaps the language of the ticket and operator contractor are probative of the allocation of "control" or "right to control" between RCCL, ICS and others. But that question is inherently fact-intensive and RCCL fails to proffer legal authority to support dismissal of Counts VI and VII based solely on a written agreement.

Thus, the requests to dismiss Counts VI and VII are **denied**. RCCL may renew its arguments, with supporting case citation, at summary judgment.

### 4. **Conclusion**

In sum, the Court **grants in part and denies in part** the Motion, (**ECF No. 11**). Count II is **dismissed without prejudice**. RCCL shall respond to the amended complaint by April 5, 2019.

**Done and ordered**, in chambers, at Miami, Florida on March 25, 2019.

_____
Robert N. Scola, Jr.
United States District Judge